UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MATTHEW SAYLOR,

        Plaintiff,

Case No. 1:04-CV-498

v.

Hon. Richard Alan Enslen

PATRICIA L. CARUSO, *et al.*,

        Defendants.

**OPINION**

_____/

    Plaintiff Mathew Saylor has objected to the September 13, 2006 Report and Recommendation of United States Magistrate Judge Ellen S. Carmody. The Report recommended that summary judgment be granted and Plaintiff's civil rights action be dismissed pursuant to Federal Rule of Civil Procedure 56. This Court now reviews these matters *de novo*. *See* 28 U.S.C. § 636(b)(1)(B). For the reasons which follow, Plaintiff's Objection will be granted.

    **BACKGROUND**

    This is an Eighth Amendment/civil rights suit alleging deliberate indifference in the treatment of back pain. Plaintiff complains about delay in the treatment of his spine and the failures of Defendant Paula Meyers, R.N., and William Warren, M.D. to refer him for specialist treatment. The Court now interprets the record in a light most favorable to Plaintiff as required by law.

    Plaintiff injured his back during a fall in March 2003 at the Camp Ottawa prison facility. (Am. Compl. ¶ 10.). Plaintiff's back symptoms thereafter worsened and he was seen by Dr. Linford Davis, M.D., at the James Street Clinic in Ludington, Michigan. (*Id.* at ¶ 14.) Dr. Davis recommended a Magnetic Resonance Imaging ("MRI") examination. (*Id.* at ¶ 15.) The MRI was

performed on December 3, 2003 at the Memorial Medical Center. (*Id.* at ¶ 16 & Ex. B.) The MRI report disclosed some disc bulging and mild stenosis at L3-4 and L4-5, disc protrusion at L4-5, and disc herniation at L5-S1. (*Id.*) On January 13, 2004, Dr. Scott Farris, M.D., examined Plaintiff and recommended an electromyogram ("EMG") examination. The EMG study, prepared by Abid Agha, M.D., showed some sciatic nerve damage, which was consistent with symptoms suffered by Plaintiff. (*Id.* at ¶¶ 20-21 & Ex. D.) In light of these studies, Dr. Davis recommended examination by a spinal surgeon for possible surgery on February 20, 2004. (Am. Compl. ¶ 23 & Ex. E.) Two weeks later, Mark Holtz, R.N., informed him that he was being transferred to Camp Pugsley to facilitate his medical treatment. (*Id.* at ¶ 23 & Ex. F.)

At Camp Pugsley, what Plaintiff got was not immediate referral to a spinal surgeon, but treatment by Paula Meyer, R.N. and Dr. William Warren on at least 11 occasions. During these various visits, Plaintiff complained about consistent pain and paralysis symptoms and explained that the injuries had persisted over a prolonged time. During such visits, he was treated with pain relievers, muscle relaxants, stretching exercises and "education," but his request for referral to a specialist was consistently declined on the ground that there was no objective evidence warranting the referral. (*See, e.g., id.* at ¶ 28 & Exs. H & J.) Dr. Warren did not treat the prior EMG and MRI studies as objective findings warranting a specialist referral despite that the medical notes indicate that staff was aware of the prior recommendations and the prior study findings. (*See id.* at Exs. G & I.) The medical records also indicate that the medical staff was told by Plaintiff of the long-term nature of the symptoms, but these were discounted because "there was no documentation of fall." (*See id.* at Ex. J.) At the various appointments, Plaintiff appeared in tears and extreme pain, experienced continued temporary paralysis, and bladder control problems. (*See id.* at ¶¶ 37, 38 & Ex.

M.)  According to Plaintiff, he was told by Defendants during visits that he was not being referred for surgery because they did not want the State of Michigan to pay for expensive care.  (*See id.* at ¶ 41 & Ex. O.)  Defendants eventually, in August 2004, determined that he should be referred to a neurosurgeon at Dwayne Waters Hospital (the prison hospital in Jackson, Michigan).  (Meyer Aff. of Apr. 13, 2006 ¶ 18.)

Plaintiff was transferred out of the facility on or about August 24, 2004.  In the following year, he received specialist care at Dwayne Waters Hospital.  Another MRI study was performed in April 2005, which noted the disc disease discussed in the earlier MRI study plus some additional spinal stenosis. (Pl.'s Summ. J. Resp., Ex. 4.)  Plaintiff was referred for spinal fusion surgery, which occurred in August 2005 and which documented the severity of the disc disease. (*Id.* at Ex. 6.)

## STANDARDS FOR SUMMARY JUDGMENT

Under the language of Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions.  *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.

1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### LEGAL ANALYSIS

**1. Eighth Amendment Standards**

"Deliberate indifference to serious medical needs" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Eighth Amendment standard has both objective and subjective components. *Id.* Thus, to be liable, a defendant must know of and disregard an excessive risk to prisoner health or safety. *Farmer*, 511 U.S. at 837. Delays in ordering treatment by medical staff can also form the basis for an Eighth Amendment violation. While prisoners do not have a constitutional right to be diagnosed correctly, the Sixth Circuit Court of Appeals and other courts have "'long held that prison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner.'" *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (citations omitted). When physicians and other medical staff know that immediate specialty care is needed and delay the referral to such care for cost or convenience reasons, the Eighth Amendment is violated. *See id*; *Cooper v. Dyke*, 814 F.2d 941, 945 (4th Cir. 1987); *Miranda v. Munoz,* 770 F.2d 255, 259 (1st Cir. 1985); *Duncan v. Duckworth,* 644 F.2d 653, 654 (7th Cir. 1981); *Sosebee v. Murphy,* 797 F.2d 179, 181-82 (4th Cir. 1986).

**2. Summary Judgment Analysis**

Although it is certainly possible to read the summary judgment record as not suggesting an inappropriate delay in care and referral by Defendants, this is not the appropriate objective of summary judgment analysis. The record must be interpreted in a light most favorable to Plaintiff. Interpreted in that light, summary judgment must be denied because the record supports possible inferences that Defendants knew about Plaintiff's serious medical needs requiring immediate referral to a specialist and delayed the referral for inappropriate reasons unrelated to the health and welfare of the patient. As such, Plaintiff's Objection will be granted.[1]

**3. Appointment of Counsel and Case Scheduling**

Given that Plaintiff's claims have survived summary judgment, the calculus as to the appointment of counsel changes; if for no other reason, then because the District Court has a strong interest in the expeditious trial of civil rights matters, which is fostered by attorney representation. *See also Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993) (discussing factors pertinent to appointment of counsel). In particular, the Court notes that cases without attorney representation often suffer delays due to the inmate's ignorance of subpoena procedures, their inability to contact witnesses and inability to prepare for trial. For these reasons, and because Plaintiff is unlikely to adequately represent his own legal interests properly as to the examination of witnesses and other trial procedures, it is just and appropriate to reconsider Plaintiff's earlier requests for appointment of counsel. This District appoints civil counsel through a coordinated process, which is managed by United States Magistrate Judge Greeley. Accordingly, the Court will order appointment of

---

[1] The Court previously granted summary judgment to Defendant Caruso and dismissed those claims with prejudice. Therefore, the Court does not read the Amended Complaint as resurrecting those claims, but rather as noting the claims for a later possible appeal, if necessary.

counsel with counsel to be assigned by Magistrate Judge Greeley. The Court advises Magistrate Judge Greeley that appointed counsel should either be a large firm, law school clinical program or other legal aid clinic with resources available to permit the taking of *de bene esse* depositions of physicians and also possibly the retention of a physician expert witness on Plaintiff's behalf.

Given that trial counsel will be appointed, it is clear that trial and other matters must be rescheduled to permit the preparation of new counsel. Also, additional discovery must be allowed in fairness to both of the parties. Magistrate Judge Carmody noted that Plaintiff had not previously cooperated in the taking of his deposition.[2] This was beside the point if the case was to be dismissed on summary judgment grounds, but is very significant now since the case will proceed to trial. The Court now warns Plaintiff to cooperate in his deposition, which (assuming Defendants still desire such deposition) should be duly scheduled after Plaintiff's new counsel has appeared and has had an opportunity to prepare for the deposition. Obviously, these matters will require the issuance of a new Case Management Order after a further status conference, which task the Court will assign to the Magistrate Judge.

## **CONCLUSION**

Accordingly, an Order shall issue consistent with this Opinion, granting Plaintiff's Objection, adopting the Report and Recommendation in part and rejecting it in part, requiring the appointment of counsel for Plaintiff, and providing for the rescheduling of trial and other dates.

DATED in Kalamazoo, MI:  
    October 10, 2006

    /s/ Richard Alan Enslen  
RICHARD ALAN ENSLEN  
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] The Magistrate Judge also determined that Plaintiff's claims should not be dismissed due to failure to cooperate. The Court agrees with this conclusion.